# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARIA ENCINAS**, individually and as representative for the Estates of Luis Nava, Daniel Nava, Carlos Nava, George Nava, Esperanza Nava, and Judith Nava, **ESTATE OF LUIS NAVA, GREGORY BALZER, IRMA BUCK, ESTELA CABUS, ESTATE OF DANIEL NAVA, ESTATE OF CARLOS NAVA, ESTATE OF GEORGE NAVA, ESTATE OF ESPERANZA NAVA, ESTATE OF JUDITH LATIOS, SUSANA GOMEZ, EDDIE NAVA, ANTHONY RICH, MELVIN RICH, SHARON RICH, STEPHANIE RICH, GEORGINA RUELAS, HAROLD WOODSIDE, LISA ZIERHUT, MARY KATHLEEN ZIERHUT, RICHARD ZIERHUT, SR., PAMELA ELAINE DAVIS, TERRI NORENE JONES, JOSEPH M. COOK,** and **THOMAS QUINN**<br><br>              Plaintiffs,<br><br>v.<br><br>**THE ISLAMIC REPUBLIC OF IRAN**<br>Ministry of Foreign Affairs<br>Khomeini Avenue<br>United Nations Street<br>Tehran, Iran<br><br>              AND<br><br>**THE IRANIAN MINISTRY OF INFORMATION AND SECURITY**<br>Pasdaran Avenue<br>Golestan Yekom<br>Tehran, Iran,<br><br>              Defendants. | **Civil Action No.** 1:18-cv-2568<br><br>**Judge:** |

<u>**COMPLAINT**</u>

**COME NOW** Plaintiffs in the above-styled action and file this Complaint against Defendants the Islamic Republic of Iran and the Iranian Ministry of Information and Security, showing as follows:

## I.    INTRODUCTION

1.    This action is brought by Plaintiffs, Maria Encinas, *et al*., through counsel, against the Islamic Republic of Iran and the Iranian Ministry of Information and Security for orchestrating the October 23, 1983 suicide bombing of the U.S. Marine barracks in Beirut, Lebanon.  The bombing, which killed 241 American servicemembers and injured numerous others, was the deadliest state-sponsored terrorist attack against American citizens prior to September 11, 2001. Plaintiffs are American servicemembers who were wounded in the attack and the families and estates of servicemembers who were killed or wounded.

## II.    JURISDICTION AND VENUE

2.    This Court exercises both subject matter jurisdiction and personal jurisdiction over the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS") (collectively, "Defendants") in accordance with the Foreign Sovereign Immunities Act ("FSIA").

3.    The FSIA grants U.S. district courts "original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity."  28 U.S.C. § 1330. Iran is a foreign state and MOIS is an agency or instrumentality of a foreign state under 28 U.S.C. § 1603(b).  Plaintiffs seek relief against Defendants in personam through a nonjury civil action.

4.     Defendants are not immune from the jurisdiction of U.S. courts because, pursuant to 28 U.S.C. § 1605A(a)(1), Plaintiffs seek money damages against Defendants for committing acts of extrajudicial killing, and providing material support for such acts, which were engaged in by Defendants' officials, employees, and agents while acting within the scope of their office, employment, or agency.

5.     Because the acts complained of occurred in Lebanon, Plaintiffs need not afford Defendants "a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration," pursuant to 28 U.S.C. § 1605A(a)(2)(A)(iii).

6.     Venue in this Court is proper in accordance with the provisions of 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

### III.     THE PARTIES

7.     The named Plaintiffs in this action consist entirely of members of the United States Marine Corps; their heirs at law and legatees; and their immediate family members, all of whom are qualified as claimants in accordance with 28 U.S.C. § 1605A(a)(ii), who suffered physical and/or emotional injuries as a result of the terrorist attack upon the United States Marine Corps, Battalion 1/8, Headquarters Building of the 24th Marine Amphibious Unit in Beirut, Lebanon on October 23, 1983.  Members of the United States Marine Corps were assigned to the 24th Amphibious Unit.  Members of the United States Navy and United States Army were present at the site of the occurrence in support of the 24th Amphibious Unit, either on a regularly assigned basis or temporarily, including on October 23, 1983.

8.     Defendant Iran is a foreign state which was, as a result of the acts hereinafter complained of, and is to the present, designated as a state sponsor of terrorism in 49 FED. REG.

3

2836, Jan 23, 1984, pursuant to Section 6(j) of the Export Administration Act of 1979, 50 U.S.C. app.  2405(j)).

9.      Defendant MOIS is an agency of Defendant Iran whose activities included, at all times relevant to this action, the promotion of terrorist acts directed against the armed forces of the United States and United States citizens, by and through material support to various terrorist organizations including the Lebanese terrorist organization known as "Hezbollah."  In addition, a member of the Iranian Revolutionary Guard was utilized to drive the truck which crashed into the Marine barracks in Beirut, Lebanon on October 23, 1983 and detonated, inflicting personal injury and the death of 241 American servicemembers.

## IV.      STATEMENT OF FACTS

10.      The Republic of Lebanon is a mountainous country bordered by Israel, Syria, and the eastern shore of the Mediterranean Sea.  At the time of the 1983 bombing of the Marine barracks, and still today, Lebanon was inhabited by members of a diverse set of religious faiths, including Maronite and Greek Orthodox Christians, Sunni and Shia Muslims, and others.

11.      Lebanon did not participate militarily in the 1967 and 1973 Arab-Israeli wars.  By 1973, however, approximately one out of every ten persons living in Lebanon was a Palestinian refugee, many of whom supported the efforts of the Palestine Liberation Organization ("PLO") against Israel.  Some of these refugees engaged in guerilla warfare and terrorist activity against Israel from bases established in southern Lebanon.  Beginning in 1968, Israel engaged in reprisals against these Palestinian strongholds.  In 1975, civil war broke out in Lebanon between, on the one hand, Lebanese Muslims and Palestinian refugees, who generally supported the PLO, and on the other, Lebanese Christians, who did not support the PLO.  The war lasted for fifteen years, during which approximately twenty thousand Lebanese were killed and many others wounded.

4

12.     In 1979, the Shah of Iran was deposed, and the nation of Iran was transformed into an Islamic theocracy, led by the Ayatollah Ruhollah Khomeini.  The new government quickly adopted a constitution committing itself to "provid[ing] the necessary basis for ensuring the continuation of the Revolution at home and abroad."  Toward that end, between 1983 and 1988, the government of Iran spent approximately $50 to $150 million to finance terrorist organizations in the Near East, including in the war-torn republic of Lebanon.

13.     In 1982, Israel invaded Lebanon in an effort to drive the PLO out of the southern portion of the country.

14.     Following this invasion, the Iranian government sought to radicalize the Lebanese Shi'ite community.  Iran encouraged the creation of an organization called "Hezbollah," with the goal of furthering the transformation of Lebanon into an Islamic theocracy modeled after Iran.  In 1982 and 1983, Hezbollah was reliant on and strictly controlled by Iran, which provided the group with orders, military training, weapons and other supplies, and financial support.

15.     The primary agency through which the Iranian government both established and exercised operational control over Hezbollah was MOIS.  MOIS acted as a conduit for Iran's provision of funds to Hezbollah, provided the group with explosives, and, at all times relevant to the events described in this complaint, exercised operational control over the group.  In doing so, MOIS acted with the express approval of Iranian government leaders.

16.     In late 1982, with the backing of the United Nations, a multinational peacekeeping coalition, consisting of American, British, French, and Italian soldiers, arrived in the Lebanese capital of Beirut.  In May 1983, the 24th Marine Amphibious Unit of the U.S. Marines (the "24th MAU") arrived in Lebanon as part of this coalition.

17.     The members of the 24th MAU were non-combatants operating under peacetime rules of engagement.  The rules of engagement issued to the 24th MAU made clear that it did not possess combatant or police powers.  The soldiers of the 24th MAU were ordered not to carry weapons with live rounds in their chambers and were permitted to use live rounds only if directly ordered to do so by a commissioned officer or if they found themselves in a situation requiring the immediate use of deadly force for purposes of self-defense.  "The members of the 24th MAU were more restricted in their use of force than an ordinary U.S. citizen walking down a street in Washington, D.C."  *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 50 (D.D.C. 2003).

18.     On or around September 26, 1983, MOIS sent a message to the Iranian ambassador to Syria, directing him to instruct terrorist forces in Lebanon to initiate attacks against the multinational coalition and "to take a spectacular action against the United States Marines."

19.     The Iranian ambassador subsequently contacted a member of the Iranian Revolutionary Guard ("IRG"), and instructed him to instigate the Marine barracks bombing.  IRG members in Lebanon organized a meeting with Hezbollah leaders, at which they formed a plan to carry out attacks against the American and French barracks in Lebanon.

20.     A 19-ton truck was disguised so that it would resemble a water delivery truck that routinely arrived at the Beirut International Airport, which was located near the U.S. Marine barracks in Beirut.  The truck was modified so that it could transport a gas-enhanced explosive device.

21.     The truck was determined by Iranian military engineers to have an appropriate size and weight to crash through a barbed wire emplacement, fit between two sandbagged sentry posts, penetrate an iron fence gate, climb over a sewer pipe obstruction, move through a sandbag inner barrier into a passenger entry hallway, and enter the center lobby of the Marine barracks building.

Iranian military engineers further determined that an explosion from this position would have sufficient force to collapse the Marine barracks structure.

22.     On the morning of October 23, 1983, members of Hezbollah ambushed the real water delivery truck before it arrived at the barracks.  The fake water delivery truck then set out for the barracks, driven by Ismalal Ascari, an Iranian citizen and IRG member.

23.     At approximately 6:25 a.m. Beirut time, the truck drove past the Marine barracks. As the truck circled in the large parking lot behind the barracks, it increased its speed.  The truck then crashed through a barbed wire barrier and a wall of sandbags, and entered the barracks.  When the truck reached the center of the barracks, the bomb in the truck detonated.

24.     The resulting explosion was the largest non-nuclear explosion that had ever been detonated, equivalent to 15,000 to 21,000 pounds of TNT.  It ripped locked doors from their doorjambs, shredded trees located 370 feet away, and shattered all of the windows at an air traffic control tower, located over half a mile away, at the Beirut International Airport.

25.     Most significantly, the four-story Marine barracks in which the bomb detonated was completely destroyed.

26.     241 servicemembers were killed, and many others were severely injured.  For many of the victims, death was not instantaneous, and they were forced to endure extreme pain and suffering and economic losses.

27.     The death certificates issued for the victims of the attack listed the cause of death as "terrorist attack."  The death certificates did not represent that the victims were killed in action.

28.     Hezbollah lacked the capacity to carry out the attack on the Marine barracks, which required careful and sophisticated planning, without Iranian material and technical support and direction.

29.     At the time of the bombing, the explosive used, bulk-form pentaerythritol tetranitrate ("PETN"), was not commercially available and was produced only by state-sponsored manufacturers for military purposes.  Bulk-form PETN was manufactured in Iran, but not in Lebanon.

30.     The attack on the Marine barracks was expressly approved by Iranian leaders, including Iran's Supreme Leader Ayatollah Khomeini and Iran's prime minister.  Given their positions of authority, their official acts are tantamount to acts by the government of Iran.

## V.     INDIVIDUAL ALLEGATIONS

31.     On October 23, 1983, when the explosive device described above was detonated, **Luis Nava**, a member of the United States Marine Corps, and a resident of and citizen of the United States, suffered fatal injuries.

32.     Decedent, Luis Nava, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

33.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs **Maria Encinas**, **Daniel Nava**, **Carlos Nava**, **Eddie Nava**, **Susana Gomez**, **Irma Buck**, **Georgina Ruelas**, **Estela Cabus**, and **Judith Latios**, the siblings of Luis Nava, and **George Nava** and **Esperanza Nava**, the parents of Luis Nava, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

34.     On October 23, 1983, when the explosive device described above was detonated, Steven Forrester, a member of the United States Marine Corps, and a resident of and citizen of the

United States, suffered fatal injuries.

35.    Decedent, Steven Forrester, from the time of injury to his death thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken by the agents of Defendants.

36.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs **Anthony Rich**, **Melvin Rich**, **Sharon Rich**, and **Stephanie Rich**, the siblings of Steven Forrester, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

37.    On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully inflicted injuries upon Richard Zierhut, a member of the United States Marine Corps, resulting in pain and suffering and economic losses.

38.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs **Lisa Zierhut** and **Mary Kathleen Zierhut**, the siblings of Richard Zierhut, and **Richard Zierhut, Sr.**, the father of Richard Zierhut, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

39.    On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully inflicted injuries upon Plaintiff **Gregory Balzer**, a member of the United States Marine Corps, resulting in pain and suffering and economic losses.

40.    The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Gregory Balzer, in fear and apprehension of harm as a direct result of their actions.

41.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Gregory Balzer, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

42.     On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully battered and did violence to the body of Plaintiff, **Harold Woodside**, a member of the United States Marine Corps, inflicting injuries upon him resulting in pain and suffering and economic losses.

43.     The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Harold Woodside, in fear and apprehension of harm as a direct result of their actions.

44.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Harold Woodside, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

45.     On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully inflicted injuries upon Scott Smith, a member of the United States Marine Corps, resulting in pain and suffering and economic losses.

46.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through

its agency, the Iranian Ministry of Information and Security, Plaintiffs **Pamela Elaine Davis** and **Terri Norene Jones**, the siblings of Scott Smith, endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

47. On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully inflicted injuries upon Plaintiff **Joseph M. Cook**, a member of the United States Marine Corps, resulting in pain and suffering and economic losses.

48. The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Joseph M. Cook, in fear and apprehension of harm as a direct result of their actions.

49. As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Joseph M. Cook, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

50. On October 23, 1983 members of Hezbollah by use of an explosive device as above described, willfully, violently and forcefully inflicted injuries upon Plaintiff **Thomas Quinn**, a member of the United States Marine Corps, resulting in pain and suffering and economic losses.

51. The members of Hezbollah, as above alleged, intentionally and willfully placed the Plaintiff, Thomas Quinn, in fear and apprehension of harm as a direct result of their actions.

52. As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiff, Thomas Quinn, endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the

company of his family and friends, and was subjected to injury, pain, discomfort and inconvenience.

## VI.    CLAIMS

### COUNT I
### Wrongful Death
### Pursuant to 28 U.S.C. § 1605A

53.    When the October 23, 1983 Beirut attack occurred, Luis Nava[*] suffered fatal injuries.

54.    The death of Luis Nava was caused by a willful and deliberate act of extra-judicial killing perpetrated by Defendants.

55.    Defendants, through their agents, financed the attack, planned the attack and rendered material support to the activities of Hezbollah that resulted in the death of Luis Nava. Those agents were at all times acting within the scope of their agency and acted on the direction of Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security.

56.    Wherefore, the respective representative of Luis Nava's estate demands judgment, jointly and severally, against Defendants, The Islamic Republic of Iran and the Iranian Ministry of Information and Security, in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

### COUNT II
### Survival Claim
### Pursuant to 28 U.S.C. § 1605A

57.    Decedent Luis Nava, from the time of his injury to his deaths thereafter, suffered extreme bodily pain and suffering as a result of the actions described above which were undertaken

---

[*] Those Plaintiffs who are described herein as suing on behalf of estates, and who are not yet qualified as the legal representatives of those estates, intend to initiate the process required to become so qualified as soon as is practicable.

by the agents of Defendants.

58.    Wherefore, the Estate of Luis Nava, through his personal representative, demands judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

## COUNT III
### Intentional Infliction of Emotional Distress
### By Immediate Relatives of Deceased Victims
### Pursuant to 28 U.S.C. § 1605A

59.    As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs Irma Buck, Estela Cabus, Daniel Nava, Carlos Nava, Maria Encinas, George Nava, Esperanza Nava, Judith Latios, Susana Gomez, Eddie Nava, Anthony Rich, Melvin Rich, Sharon Rich, Stephanie Rich, and Georgina Ruelas have endured extreme mental anguish and pain and suffering and economic losses, and suffered emotional injury and loss.

60.    Wherefore, the aforementioned individuals demand judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for each in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

## COUNT IV
### Battery
### Pursuant to 28 U.S.C. § 1605A

61.    By use of an explosive device as described above, members of Hezbollah, willfully, violently and forcefully battered and did violence to the bodies and/or minds of Plaintiffs Gregory Balzer, Harold Woodside, Thomas Quinn, and Joseph M. Cook inflicting injuries upon them resulting in pain and suffering and economic losses.

13

62.     The willful, wrongful and intentional acts of Hezbollah were funded and directed by the Islamic Republic of Iran through its agent, the Iranian Ministry of Information and Security, and constituted a battery upon the aforementioned individuals.

63.     Wherefore, the aforementioned individuals demand judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for each in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

## COUNT V
### Assault
### Pursuant to 28 U.S.C. § 1605A

64.     The members of Hezbollah, as above alleged, intentionally and willfully placed Plaintiffs Gregory Balzer, Harold Woodside, Thomas Quinn, and Joseph M. Cook in fear and apprehension of harm as a direct result of their actions.

65.     The willful, wrongful and intentional acts of Hezbollah members were funded by and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, and the aforementioned Plaintiffs were injured in that they endured extreme mental anguish, injury, and pain and suffering and economic losses.

66.     Wherefore, the aforementioned individuals demand judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for each in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

## COUNT VI
### Intentional Infliction of Emotional Distress
### By Surviving Victims
### Pursuant to 28 U.S.C. § 1605A

67.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs Gregory Balzer, Harold

Woodside, Thomas Quinn, and Joseph M. Cook endured extreme mental anguish and pain and suffering and economic losses, suffered the loss of the company of their family and friends, and was subjected to injury, pain, discomfort and inconvenience.

68.     Wherefore, the aforementioned individuals demand judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for each in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

**COUNT VII**
**Intentional Infliction of Emotional Distress**
**By Immediate Relatives of Surviving Victims**
**Pursuant to 28 U.S.C. § 1605A**

69.     As a direct and proximate result of the willful, wrongful and intentional acts of Hezbollah members, whose acts were funded and directed by the Islamic Republic of Iran through its agency, the Iranian Ministry of Information and Security, Plaintiffs Lisa Zierhut, Mary Kathleen Zierhut, Richard Zierhut, Sr., Pamela Elaine Davis, and Terri Norene Jones have endured extreme mental anguish and pain and suffering, and suffered emotional injury and loss.

70.     Wherefore, the aforementioned individuals demand judgment against Defendants, the Islamic Republic of Iran and the Iranian Ministry of Information and Security, jointly and severally, for each in an amount in excess of TWENTY MILLION DOLLARS ($20,000,000.00).

**VIII.     REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

a)  For an award of appropriate compensatory damages under 28 U.S.C. § 1605A;

b)  For an award of punitive damages under 28 U.S.C. § 1605A in an amount sufficient to punish and/or deter similar conduct;

c)  For reasonable attorney's fees and costs;

d)  For pre-judgment and post-judgment interest; and

15

e) For all other available and appropriate relief.

November 7, 2018                                        Respectfully submitted,


                                                       BY:    /s/ Robert A. Braun

                                                       Theodore J. Leopold (Fla. Bar. No. 705608)
                                                       tleopold@cohenmilstein.com
                                                       COHEN MILSTEIN SELLERS & TOLL PLLC
                                                       2925 PGA Boulevard
                                                       Suite 200
                                                       Palm Beach Gardens, FL 33410
                                                       Telephone: (877) 515-7955

                                                       Robert A. Braun (D.C. Bar. No. 1023352)
                                                       rbraun@cohenmilstein.com
                                                       COHEN MILSTEIN SELLERS & TOLL PLLC
                                                       1100 New York Ave., NW
                                                       Suite 500, West Tower
                                                       Washington, DC 20005
                                                       Telephone: (202) 408-4600

                                                       R. Paul Hart (Ga. Bar No. 333694)
                                                       paul@kmtrial.com
                                                       Jeremy S. McKenzie (Ga. Bar No. 436655)
                                                       jeremy@kmtrial.com
                                                       KARSMAN, MCKENZIE & HART
                                                       21 West Park Avenue
                                                       Savannah, Georgia 31401
                                                       Telephone: (912) 335-4977


                                                       *Attorneys for the Plaintiffs*

16